THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| **DIANE BARTHOLOMEW,** ) | |
| **MICHAEL SHERRY,** ) | |
| **on behalf of themselves and all others** ) | |
| **similarly situated,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CASE NO.:**_____ |
| ) | |
| **LOWE'S COMPANIES, INC. a/k/a** ) | |
| **LOWE'S HOME IMPROVEMENT,** ) | **JURY DEMAND** |
| **a/k/a LOWE'S HOME CENTERS, LLC,** ) | |
| **d/b/a LOWE'S,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**COLLECTIVE ACTION COMPLAINT WITH DEMAND FOR JURY TRIAL**

**COMES NOW** Plaintiffs, Diane Bartholomew and Michael Sherry, along with opt-in Plaintiffs Willis Pelton and Jason Slater (hereinafter "Plaintiffs") on behalf of themselves and all others similarly situated, by and through their undersigned counsel, and hereby file this lawsuit against Defendant, Lowe's Companies, Inc. a/k/a Lowe's Home Improvement a/k/a Lowe's Home Centers, LLC d/b/a Lowe's (hereinafter "Defendant" or "Lowe's") and state as follows:

**Introduction**

1. This Complaint is a class action / collective action brought by Diane Bartholomew and Michael Sherry on behalf of themselves and all the other similarly-situated individuals (including by current opt-in Plaintiffs, Willis Pelton and Jason Slater) who have been or may have been affected or will be affected by the discrimination alleged below. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and redress the deprivation of rights secured by the Age Discrimination in Employment Act of

1967 (ADEA), which is codified at 29 U.S.C. § 621 *et seq.* Plaintiffs and the class they seek to represent seek equitable relief, monetary relief (to the extent necessary depending upon when relief is awarded to them and the class, as discussed further herein), a jury trial on all issues triable to a jury, and attorney's fees and costs.

### Jurisdiction and Venue

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 626(b) (ADEA provision incorporating the collective action mechanism of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219).

3. Venue is proper pursuant to 28 U.S.C. § 89 (b), § 1391(b) and § 1404(a), including because Defendant resides in this district.

### Administrative Remedies

4. Plaintiff Bartholomew filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission within 300 days of the occurrence of the last discriminatory act and has instituted this action within 90 days of receiving notice of her Right to Sue. A true and correct copy of her EEOC Charge and Right-To-Sue Letter is attached hereto as Composite Exhibit A.

5. Plaintiff Sherry filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission within 300 days of the occurrence of the last discriminatory act and requested a right-to-sue letter without investigation. A true and correct copy of his EEOC Charge is attached hereto as Exhibit B. Plaintiff will file a copy of his right-to-sue once received, it has been requested.

**Parties**

6. Plaintiff, Diane Bartholomew, is a citizen of the United States, is sixty-one years old, and is a resident of Summerville, South Carolina.

7. Plaintiff, Michael Sherry, is a citizen of the United States, is sixty-two years old, and is a resident of Naples, Florida.

8. Current opt-in Plaintiffs, Willis Pelton (a fifty-four year old male) and Jason Slater (a forty-eight year old male), are residents of South Carolina.

9. Defendant, Lowe's Companies, Inc. a/k/a Lowe's Home Improvement d/b/a Lowe's is a corporation conducting business in the State of South Carolina, the other forty-nine states and Canada, and is headquartered in or near Mooresville, North Carolina. Lowe's is the world's second largest home improvement retailer.

10. Lowe's is an employer within the meaning of that term as used in the ADEA and is an enterprise engaged in commerce within the meaning of the ADEA. At all times pertinent to the matters alleged herein, Lowe's has employed twenty (20) or more employees.

11. At all times material to this action, Plaintiffs Bartholomew, Pelton, and Slater were and are employed by Defendant at the Summerville, South Carolina location (1207 North Main Street, Summerville, South Carolina 29483 ("Summerville Store"), although Plaintiff Bartholomew worked in the past at Lowe's New Lenox, Illinois store.

12. At all times material to this action, Plaintiff Sherry was and is employed by Defendant at the Naples, Florida location (12730 Tamiami Trail East, Naples, Florida, 34113 ("Naples Store"), although he worked in the past at Lowe's New Lenox, Illinois store.

**Factual Allegations**

13. On or about August 6, 2019, Lowe's informed Plaintiffs and, on information and belief, all other potential opt-in Plaintiffs that it was ending its "allowance" pay for sales associates, like Plaintiffs.

14. From prior to 2011 to present, Plaintiffs have worked for Lowe's in hourly positions, as sales associates.

15. Until February 2012, Lowe's paid Plaintiffs their hourly rate of pay plus commissions based on the "spiff" received from the manufacturer for each sale.

16. Depending upon their individual sales volume, Lowe's sales associates would typically earn approximately $15,000 to $75,000 in spiff/commissions each year from sales.

17. Spiffs/commissions were earned by hourly sales associates from selling appliances, cabinets, flooring, and millwork (and perhaps from other types of sales).

18. Employees hired to work in sales associates' positions prior to 2012 were typically older persons and older than the average Lowe's new hire, often forty years or older prior to 2012.

19. In late 2011, Lowe's announced it was ending the practice of paying employees spiffs/commissions effective February 11, 2012, excepting certain types of employees, *infra*.

20. However, to "offset the loss in variable pay" to sales associates by ending spiff/commissions, Lowe's announced it was "replacing a portion of this income with an adjustment in affected employees pay equivalent to 50% of their 2011 earnings received from SPIFFS and commissions (paycheck dates 1/28/2011 through 1/13/2012)," also known as the pay "allowance" described further herein.

21. The only exceptions to this change was for Lowe's employees "who earned less than $250.00 in SPIFFS/Commissions" and for "Project-Specialists – Exteriors and Project

Specialists- Interiors" who were excluded from this change and continue to have "variable elements as part of their overall compensation structure," *i.e.* these persons continue to receive SPIFFS/Commissions.

22. Lowe's continues to employ and pay Project Specialists, at least Project Specialists Exteriors (PSE's) (and, on information and belief, other categories of employees), with one PSE at each Lowe's store nationwide, and these persons continue to receive SPIFFS/Commissions.

23. On information and belief, at the Naples Store, the current PSE is Kevin O'Malley who is younger than Plaintiffs at the Summerville Store. The previous PSE at this store through August 2019 is Zach Satterfield, who is also younger than Plaintiffs at the Summerville Store.

24. On information and belief, at the Summerville Store, the current PSE is Nicole Myers who is younger than Plaintiff Sherry.

25. Lowe's stated that the purpose of ending the SPIFFS/Commissions was "moving away from these variable pay components to more fixed pay brings stability to our employees."

26. Lowe's also stated to sales associates that "employees will be able to retain this pay 'allowance' as long as they remain employed with a Lowe's store in an hourly position."

27. Lowe's has and continues to receive the spiffs monies from the manufacturers previously remitted to the sales associates like Plaintiffs and, on information and belief, continues to remit them to PSE's and other non-sales associates, and/or simply pockets the money toward its bottom-line revenues.

28. Plaintiff Bartholomew earned $24,763.44 in spiffs in 2011, and, since February 11, 2012, has been paid the allowance of $476.22 per pay period (or $12,381.72 annually which is 50% of her 2011 spiffs, at 26 pay periods annually).

29. Plaintiff Sherry earned $24,201.84 in spiffs in 2011, and, since February 11, 2012, has been paid the allowance of $465.42 per pay period (or $12,100.92 annually which is 50% of his 2011 spiffs, at 26 pay periods annually).

.       30. Plaintiff Pelton earned $23,920.00 in spiffs in 2011, and, since February 11, 2012, has been paid the allowance of $460.00 per pay period (or $11,960.00 annually which is 50% of his 2011 spiffs, at 26 pay periods annually).

31. Plaintiff Slater earned $32,316.96 in spiffs in 2011, and, since February 11, 2012, has been paid the allowance of $621.48 per pay period (or $16,158.48 annually, which is 50% of his 2011 spiffs, at 26 pay periods annually).

32. All Plaintiffs, including prospective plaintiffs and members of the class, continue their role in selling Lowe's products for which Lowe's continues to earn the spiff/commissions from the manufacturers.

33. As announced in August 2019, effective February 2020, Lowe's will eliminate all spiff/commission allowances to sales associates and Plaintiffs have been told by Lowe's managers that this elimination of the allowance applies to all Lowe's sales associates that are presently receiving the allowance.

34. This action is brought pursuant to the ADEA, and specifically the collective action provision of the ADEA, 29 U.S.C. § 626(b), for equitable and injunctive relief based on the disparate impact and/or disparate treatment of Plaintiffs, on behalf of themselves and those others similarly situated, seeking to redress on a collective basis for systemic practices engaged in by Lowe's resulting in discrimination against its older work force, which practices are continuing in nature. In short, this lawsuit seeks to enjoin Lowe's from ending its "allowance" pay to Plaintiffs

and those similarly situated and to recover money damages for both its unlawful disparate impact and disparate treatment.

35. To the extent this lawsuit continues past Lowe's implementation of its previous decision and corporate-wide policy in August 2019 to end allowance pay (*i.e.* there is no resolution to this lawsuit concerning the class action allegations herein prior to February 2020), Plaintiffs seek money damages in an amount equal to the respective allowance amounts they should have been paid by Lowe's in 2020 and beyond, as well as an equal amount as liquidated damages, as well as interest, attorney's fees, and costs.

36. Once the discovery process in this matter is underway, the roles of unknown persons, potential conspirators and participants in the wrongdoing herein will likely be revealed, and Plaintiffs and the class they seek to represent reserve the right to seek leave of Court to further amend this Complaint to add new parties and/or new claims.

37. The above-referenced policies, patterns, practices, and omissions, which adversely impact older employees constitute willful violations of the ADEA. Lowe's arbitrarily and routinely employs such policies and practices systematically and continuously to discriminate against older workers, favoring younger workers, without any legitimate excuse or justification.

### Class Action Allegations

### Count I – Disparate Impact In Violation Of The ADEA

38. Plaintiff incorporates by reference the previous allegations of this complaint.

39. At all relevant times, Lowe's has been, and continues to be, an employer within the meaning of the ADEA, 29 U.S.C. 630(b).

40. At all relevant times, Lowe's has been engaged in interstate commerce or an industry affecting commerce within the meaning of the ADEA. *Id.*

41. Because the Plaintiffs range in age from 48 to 61 years-old at the time of the decision to eliminate their allowances, the Plaintiffs are all members of a class of individuals protected under the ADEA, and, on information and belief, all or most of the prospective class members are also over the age of forty.

42. As confirmed and set forth by the Court in *Smith v. City of Jackson*, 544 U.S. 228 (2005) and *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84 (2008), the ADEA prohibits Lowe's from utilizing facially age-neutral policies that have a significant adverse disparate impact on qualified workers over the age of 40, like Plaintiffs, unless Lowe's can prove (which it cannot), under its burden of proof of production and persuasion, that disparate impact caused by the challenged policies and practices was premised on reasonable factors other than age.

43. On information and belief, Lowe's decision to eliminate its allowances to sales associates, although previously promised throughout their employment, will have and is having a significant adverse disparate impact on Plaintiffs and other qualified employees over the age of 40 in violation of the ADEA. As a result, Plaintiffs and others similarly situated were denied significant benefits of their employment that were promised by Lowe's and were promised to continue throughout their employment in an hourly position of sales associate.

44. While Plaintiffs cannot yet provide the exact statistical impact on them and the class they seek to represent without the benefit of discovery, those adversely impacted by Lowe's discriminatory practices are, by default and by common sense given the passage of time (and the fact most sales associates were older and more experienced in 2011), over the age of 40.

45. By failing to advise its workforce with statements that are true and accurate and would continue to be true and accurate, waiting for years and to a point where employees have less career mobility and ability to make such decisions (under the false justification that the purpose of

the switch from spiffs/commissions to fixed allowances was to "bring stability to our employees"), Lowe's discriminated against Plaintiffs and the class of similarly situated employees over the age of 40 in contravention of the prohibitions on age discrimination set forth in the ADEA.

46. As a direct and proximate result of the foregoing violations of the ADEA, Plaintiffs have and will sustain injury, including, but not limited to, elimination of their allowances, a substantial part of their pay structure and anticipated pay structure and therefore, seek injunctive relief and associated money damages, liquidated damages, attorney's fees and costs.

**Count II – Pattern & Practice Disparate Treatment In Violation Of The ADEA**

47. Plaintiff incorporates by reference paragraphs 1 through 37 as if previously set forth herein.

48. At all relevant times, Lowe's has been, and continues to be, an employer within the meaning of the ADEA, 29 U.S.C. 630(b).

49. At all relevant times, Lowe's has been engaged in interstate commerce or an industry affecting commerce within the meaning of the ADEA. *Id.*

50. Because the Plaintiffs range in age from 48 to 61 years-old at the time of the decision to eliminate their allowances, the Plaintiffs are all members of a class of individuals protected under the ADEA, and, on information and belief, all or most of the prospective class members are also over the age of forty.

51. Each of the Plaintiffs was and is well-qualified for their positions with Lowe's and have demonstrated a well-established record of success with the company prior to the adverse action eliminating their allowances.

52. Each of the Plaintiffs and the class they seek to represent suffered adverse employment action when Lowe's decision, intentional in nature, was made to eliminate their

allowances, while other, younger employees were treated more favorably – either because they did not suffer any reduction in their earnings (*e.g.* FSE's like Mr. O'Malley, Mr. Satterfield, and Ms. Myers), or were provided with accurate information about prospective benefits and earnings in their positions with an ability to avoid demotion and/or demotion by virtue of decreased remitted monies for hours worked and increased sales, or were younger workers hired to replace persons as sales associates because they were ineligible to receive allowances, or frustrated the purported purpose of Lowe's decision to start the allowances in the first place, *i.e.* because it will cause instability gained by employees due to "fixed pay," or Lowe's intentionally kept these employees earning allowances in employment stagnation by keeping them incentivized to avoid applying for or seeking different non-hourly positions that would have potentially changed their career path(s) with it or with another employer.

53.     On information and belief, Lowe's has and continues to receive the spiffs monies from the manufacturers previously remitted to the sales associates Plaintiffs and the class they seek to represent, and, continues to remit them to Project Specialists and other non-sales associates that are substantially younger and/or simply pockets the money toward its bottom line revenues, effectively creating a pattern and practice of discrimination against older sales associates.

54.     Thus, the adverse employment action by Lowe's against Plaintiffs occurred under circumstances giving rise to an inference that Lowe's acted against them by ending the allowances due to their age, in violation of the ADEA, 29 U.S.C. § 621, *et seq.*

55.     To date, Lowe's has not offered any explanation for its decision to end the allowances, other than to state they will be eliminated. However, the job duties being performed by each of the Plaintiffs were critical to the ongoing operations of Lowe's. Therefore, while the allowance may have been eliminated, the job functions that allow for Lowe's to recoup the SPIFFS

certainly were not. This stated explanation for the ending of the allowance was merely a pretext designed to disguise Lowe's true motive – the elimination or economic demotion of older workers.

56. Lowe's has similarly discriminated against all ADEA Class Members in the terms and conditions of their employment, on the basis of their age, in violation of the ADEA.

57. As a consequence of the unlawful policy, pattern and practice, and unlawful conduct of Lowe's as described herein, Plaintiffs and prospective ADEA Class Members have suffered damages in the form of prospective lost compensation (and after February 2020, lost compensation), and seek front-pay and back pay, attorneys' fees and cost, declaratory and injunctive relief, potential loss of retirement benefits (depending upon the class members arrangement with Lowe's concerning pension and retirement), liquidated damages, and such other relief as the Court may deem appropriate.

WHEREFORE, Plaintiffs respectfully requests that this Court:

(a) Enter a judgment declaring this action to be a collective action properly maintained pursuant to 29 U.S.C. § 216(b), including to facilitate notice upon the class and conditionally certify the class, that the Plaintiffs named herein be designated as representatives of the ADEA Class, and that their counsel of record be designated as ADEA Class Counsel;

(b) Enter a judgment declaring that Lowe's patterns, practices and omissions, as above-described, in ending the allowances of ADEA Class Members of the collective action who were 40 years of age or older at the time of the decision (whenever it was made, no later than August 2019) violates the ADEA;

(c) Issue a permanent prohibitory injunction ordering Lowe's and its officers, agents, employees and successors to cease and desist from the unfair discriminatory employment patterns,

practices, policies and omissions complained of herein, which result in the elimination of allowances for employees forty-years of age or older;

(d) Issue a permanent mandatory injunction requiring Lowe's to take such affirmative action as will effectuate the purposes of the ADEA, including adopting employment practices in accord with the ADEA's requirements;

(e) Enter a judgment and award in favor of the Plaintiffs and the ADEA Class Members, and against Lowe's for reasonable monetary damages, including back pay (plus interest or an appropriate inflation factor and an enhancement to offset any adverse tax consequences associated with lump sum receipt of back pay), front pay, benefits and all other damages owed to the Plaintiffs and the ADEA Class Members, in an amount proven at trial, resulting from Lowe's unlawful and discriminatory acts or omissions, including unlawful retaliation for opposing such practices;

(f) Enter a judgment and award in favor of each of the Plaintiffs and each ADEA Class Member for the maximum statutory amount of liquidated damages available under the ADEA;

(g) Enter a judgment and award in favor of the Plaintiffs and the ADEA Class for costs, including, but not limited to, reasonable attorney's fees, experts' fees, and other costs and expenses of this litigation;

(h) Enter a judgment and award in favor of the Plaintiffs and the ADEA Class for pre-judgment and post-judgment interest;

(i) Award such other and further legal and equitable relief as may be found appropriate and as this Court may deem just and proper; and

(j) Retain jurisdiction over this action until such time as it is satisfied that Lowe's has remedied the practices complained of and is determined to be in full compliance with the law, including any potential OWBPA issues, including those arising from potential early resolution.

SALAS LAW FIRM, P.A.

## **DEMAND FOR JURY TRIAL ON ALL ISSUES SO TRIABLE**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted this 20th day of September, 2019.

//s//Michael G. Green II, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email:  michael@jpsalaslaw.com
Fla. Bar. No. 60859

//s//John P. Salas, Esq.
SALAS LAW FIRM, P.A.
8551 West Sunrise Boulevard
Suite 300
Plantation, FL 33322
Office: (954) 315-1155
Fax: (954) 452 -3311
Email: jp@jpsalaslaw.com
Fla. Bar. No. 87593