UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DIANE BARTHOLOMEW,
MICHAEL SHERRY, on behalf
of themselves and all others
similarly situated,

    Plaintiff,

v.                                       Case No.: 2:19-cv-695-JLB-KCD

LOWE'S HOME CENTERS, LLC,

    Defendant.
_____

## ORDER

Before the Court is Plaintiffs' Motion to Compel All Lowe's Privilege Log Documents or For In Camera Review. (Doc. 145.) Defendant Lowe's Home Centers, LLC has filed a response (Doc. 153), making this matter ripe. The Court now denies Plaintiffs' motion.

## I. Background

This is an employment dispute traveling as a class action. Plaintiffs Diane Bartholomew and Michael Sherry are sales associates at Lowes[1]. When they started, their compensation included commissions. In 2012, Lowes ceased paying commissions and created a hybrid pay structure where associates

---

[1] The Court refers to Defendant as "Lowes" sans apostrophe for simplicity's sake and to avoid confusion about possessive use of the noun.

received an "allowance" based on prior sales. Fast forward another several years and Lowes ended the allowance program too. That left Plaintiffs receiving a straight hourly wage. (*See* Doc. 116 at 1-2.) They then brought this class action suit, claiming cessation of the allowance program is age discrimination and unjust enrichment.

This case has been contentious from the beginning. The parties have fought about the sufficiency of the complaint (Doc. 9), whether to stay discovery (Doc. 33), Lowes' affirmative defenses (Doc. 65), class certification (Doc. 82), and whether Lowes has properly designated documents under the parties' confidentiality agreement (Doc. 104.) That all leads us to the present discovery dispute about Lowes' privilege log.

Some background about the course of discovery helps to understand the parties' arguments. As best the Court can tell, discovery started in April 2020 when Lowes disclosed its first batch of documents. (Doc. 147 ¶ 3.) This production was apparently not complete—Lowes withheld several categories of documents awaiting a confidentiality agreement. (Doc. 147-6.) Once Plaintiffs agreed to a protective order, Lowes resumed discovery production. Over several months, Lowes disclosed thousands of documents and emails about its decision to change the associate pay structure.

We eventually get to October 2020, which is when Lowes served its first privilege log. It contained about 200 entries marked "Attorney-Client

Privilege." (Doc. 147-13.) Plaintiffs objected to the log, claiming it was not specific enough to vet the privilege assertion. (Doc. 147 ¶ 17.)

The discovery process worked as it should, and after some back-and-forth, Lowes agreed to prepare a new privilege log. The resulting document, with 181 entries, added new fields to help Plaintiffs identify how the documents were privileged. (Doc. 147 ¶ 18.)

Plaintiffs again objected. And again the discovery process envisioned by the Federal Rules worked. After several phone calls, Lowes produced a third privilege log—the document now in dispute. (Doc. 147 ¶¶ 19-20.) A few additional details are important. The third privilege log contains only 103 documents. Doing some quick lawyer math, that means Lowes agreed to disclose around 80 documents (or at least parts of them) previously withheld as privileged. Plaintiffs have attached several of those documents to their motion to compel. (*See* Doc. 147.) They mainly consist of internal emails among Lowes' management.

Plaintiffs received Lowes' third privilege log in April 2022—for those keeping track, that's two years after the first production. Things speed up from there. The parties conferred throughout April, but Lowes declined to keep revising the privilege log. This motion followed a month later. (Doc. 145.) Plaintiffs seek "to compel production of all entries [on Lowes' third privilege log], or, alternatively, request this Court's *in camera* review." (Doc. 147 at 1.)

3

## II. Legal Standards

Lowes is withholding documents under the attorney-client privilege. The attorney-client privilege is among the oldest recognized at common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).[2] For both corporations and individuals, it "exists to protect confidential communications . . . made for the purpose of securing legal advice." *In re Grand Jury Proc. 88-9 (MIA)*, 899 F.2d 1039, 1042 (11th Cir. 1990). The ultimate touchstone for application of the privilege is whether the communication reveals advice from an attorney. If one of the primary purposes of the communication is to convey legal advice, then the attorney-client privilege generally attaches. *See Upjohn Co.*, 449 U.S. at 389.[3]

The party seeking shelter under the attorney-client privilege must prove it applies. To accomplish this task without revealing the protected information, the Federal Rules of Civil Procedure allow for a privilege log. *See Caudle v. D.C.*, 263 F.R.D. 29, 35 (D.D.C. 2009) ("A privilege log has become an almost universal method of asserting privilege under the Federal Rules."). Rule 26

---

[2] Disclaimer: By using hyperlinks, the Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide, nor does it have any agreements with them. The Court is also not responsible for a hyperlink's availability and functionality, and a failed hyperlink does not affect this Order.

[3] There is no discussion among the parties as to whether federal or state law governs. And where, as here, there are both state and federal claims, a determination of the applicable law can be complicated. *See State Farm Mut. Auto. Ins. Co. v. Kugler*, 840 F. Supp. 2d 1323, 1329 (S.D. Fla. 2011). Plaintiffs do, however, cite the federal standard for assessing the attorney-client privilege. (Doc. 147 at 24-29.) The Court will follow suit and use federal law.

requires a party asserting privilege to "describe the nature of the documents" not disclosed "in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

To look behind a privilege log, or strike it altogether as Plaintiffs seek here, there must be some showing that an issue with the privilege claim exists. *See* United States v. Zolin, 491 U.S. 554, 571 (1989). Court intervention is not appropriate just because a party objects to the assertions of privilege. There must be more—something to call the privilege log into question. *See, e.g.*, MapleWood Partners, L.P. v. Indian Harbor Ins., 295 F.R.D. 550, 627 (S.D. Fla. 2013) ("The Court does not conduct an *in camera* review lightly, nor simply because a party requests it[.]"). And even if an appropriate showing is made, it remains withing the court's discretion to decide what relief (if any) is appropriate. Zolin, 491 U.S. at 571-72.

### III. Discussion

Plaintiffs press several arguments. The Court starts with their broadest: "Lowes has not met its burden." (Doc. 147 at 37.) Because Lowes is relying on a privilege log to establish the attorney-client privilege, Plaintiffs' argument is just another way to say the privilege log is deficient. *See, e.g.*, Safeco Ins. Co. of Am. v. Weissman, No. 17-62032-CIV, 2018 WL 7046634, at *10 (S.D. Fla. Sept. 5, 2018).

5

The standard for assessing the adequacy of a privilege log is whether, as to each document, it sets forth specific facts that establish each element of the claimed privilege. *See Foodonics Int'l, Inc. v. Srochi,* No. 3:17-CV-1054-J-32JRK, 2020 WL 9670613, at *4 (M.D. Fla. Mar. 20, 2020). Lowes' privilege log passes this test. It describes each document, the date it was prepared, the privilege asserted, and the name of the author and recipients. (*See* Doc. 146-25.) While more detail about the legal advice exchanged in the communications would have been helpful, the Court does not see it as a necessary requirement here given the cabined nature of the dispute. Any gaps about the subject of the communications can also be gleaned from the surrounding documents that were produced. Nothing more is required on the facts here. *See, e.g., In re Cap. One Bank Credit Card Int. Rate Litig.,* 286 F.R.D. 676, 681 (N.D. Ga. 2012). Other courts have similarly recognized that a privilege log with the categories of information Lowes included is proper. *See, e.g., Triple Five of Minnesota, Inc. v. Simon,* 212 F.R.D. 523, 528 (D. Minn. 2002).

This leaves one question to decide—have Plaintiffs shown enough to doubt the privilege log? They must do "more than merely tender dozens of pages of logs to the Court and say 'here, you figure it out.'" *Gazzara v. Pulte Home Corp.,* No. 6:16-CV-657-ORL31TBS, 2016 WL 7335479, at *3 (M.D. Fla. Dec. 16, 2016). There must be "a factual basis adequate to support a good faith belief by a reasonable person that in camera review of the materials may

6

reveal" that the privilege was improperly asserted. *LeBlanc v. Coastal Mech. Servs.*, LLC, No. 04-80611-CIV, 2005 WL 8156077, at *5 n.4 (S.D. Fla. May 25, 2005) (citing *Zolin*, 491 U.S. at 572).

To meet their burden, Plaintiffs insist that Lowes concealed discoverable documents "in [its] privilege log." (Doc. 147 at 32.) This argument stems from Lowes identifying several emails on its second privilege log that were removed from the third version and produced. According to Plaintiffs, "[t]his [belated disclosure], by itself, is an independently sufficient reason for this Court to grant the instant [m]otion." (*Id.*)

The Court disagrees. As Lowes persuasively explains, its privilege log was revised, and the previously withheld emails produced, because the parties signed a non-waiver agreement under Federal Rule of Evidence 502. (Doc. 153 at 2.) Lowes can hardly be faulted for this approach given the uncertainty surrounding how email chains are treated in this context. *See United States v. Davita, Inc.*, 301 F.R.D. 676, 684 (N.D. Ga. 2014). Thus, in the Court's view, "[r]ather than being suggestive of . . . bad faith," Lowes' "revision of its privilege log is evidence of its good faith efforts to ensure that its privilege log is accurate and correct." *Apple, Inc. v. Corellium, LLC*, No. 19-81160-CV, 2020 WL 1986942, at *3 (S.D. Fla. Apr. 27, 2020).

Moving on, Plaintiffs emphasize that many documents on the privilege log are communications between non-attorneys. (Doc. 147 at 30.) And where

7

an attorney is included, the communications often lack a "confidential" designation. (*Id.* at 31.) These discrepancies, according to Plaintiffs, also undermine the privilege log. *See, e.g.*, *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1328 (N.D. Ga. 2015) (remarking that communications by non-attorneys are generally not privileged); *In re Hillsborough Holdings Corp.*, 118 B.R. 866, 869 (Bankr. M.D. Fla. 1990) ("For the communication to be privileged, it must not only be intended to be confidential, but it must, in fact, be confidential.").

Yet again, the Court is unconvinced. The attorney-client privilege covers communications between non-lawyers. "To conclude otherwise would result in a somewhat absurd finding that a document generated for purposes of obtaining and/or assisting in the transmission of legal advice would [lose its privilege] merely because the author and recipient were not attorneys." *In re Denture Cream Prod. Liab. Litig.*, No. 09-2051-MD, 2012 WL 5057844, at *13 (S.D. Fla. Oct. 18, 2012). And it is not unusual, as Plaintiffs suggest, to see non-attorney communications on a corporate privilege log. Since the decision-making power of a corporation is often shared, the circulation of privileged communications among several employees (including non-lawyers) is unavoidable. *See Upjohn Co.*, 449 U.S. at 391.

Plaintiffs' argument about the lack of confidentiality markings likewise falls flat. Documents need not be marked "confidential" for the attorney-client

8

privilege to attach. *See Liles v. Stuart Weitzman, LLC,* No. 09-61448-CIV, 2010 WL 11505149, at *3 (S.D. Fla. June 15, 2010). What matters is how the documents were shared. The attorney-client privilege applies to legal "communications between corporate employees . . . who have a need to know in the scope of their corporate responsibilities." *In re Vioxx Prod. Liab. Litig.,* 501 F. Supp. 2d 789, 796 (E.D. La. 2007). Plaintiffs offer nothing beyond speculation to suggest that the materials on Lowes' privilege log were disclosed to anyone outside those with a need to know. And speculation is not enough here.

Plaintiffs' final effort to upend the privilege log is based on waiver. They claim that Lowes waived any privilege by "asserting the [reasonable-factor-other-than-age ("RFOA")] defense." (Doc. 147 at 35.) This defense, according to Plaintiffs, places Lowes' confidential communications "at issue" and thus "fairness . . . requires examination of [them]." (*Id.*) Plaintiffs' logic is hard to follow. As best the Court can tell, they believe that "who knew what and when" at Lowes is a key component to the RFOA defense. (Doc. 147 at 36.) And because Lowes' confidential communications are directly relevant to those questions, disclosure is needed. (*Id.*)

Plaintiffs ask too much of the implied waiver doctrine. Lowes' RFOA defense does not put its attorney-client communications "at issue" in the sense required. *See, e.g., Centennial Bank v. ServisFirst Bank, Inc.,* No. 8:16-CV-88-

9

T-36CPT, 2020 WL 1061450, at *4 (M.D. Fla. Mar. 4, 2020) (explaining that the implied waiver doctrine applies in a narrow set of circumstances, such as when the claimant "invoke[s] an advice of counsel defense or otherwise inject[s] . . . defenses that necessarily require proof by way of a privileged communication"). But even if an implied waiver could be found, disclosure of the privilege log is still inappropriate. The attorney-client privilege protects only communications. "[I]t does not protect disclosure of the underlying facts," such as the timeline of Lowes' decision to end the allowance program. *Upjohn Co.*, 449 U.S. at 395. This means Plaintiffs can discover "who knew what and when" through other means such as deposition testimony.[4]

The relief Plaintiffs seek—in camera review or full disclosure of the privilege log—is strong medicine. Either path ends with the Court invading the confidentiality of communications that Lowes has certified are privileged under the penalty of Fed. R. Civ. P. 11. "[T]he confidentiality of attorney-client communications is an interest traditionally deemed worthy of maximum legal protection." *Anderson v. Branch Banking & Tr. Co.*, No. 13-CV-62381, 2015

---

[4] Plaintiffs also claim that Lowes "waived its privilege via a sword and shield waiver." (Doc. 147 at 36.) But there is no reasoning or case law accompanying this argument. Plaintiffs simply declare that the waiver applies and move on. The Court refuses to entertain such a perfunctory argument. In our adversarial system, a claimant must present her case. It is not a court's job "to conduct research to provide the proper support for [conclusory] arguments." *Eli Rsch., LLC v. Must Have Info, Inc.*, No. 2:13-CV-695-FTM-38CM, 2014 WL 4983710, at *2 (M.D. Fla. Oct. 6, 2014).

WL 2339470, at *3 (S.D. Fla. May 14, 2015). The facts here are not enough for the Court to strip Lowes of this legal protection.

It is now **ORDERED**:

Plaintiffs' Motion to Compel All Lowe's Privilege Log Documents or For In Camera Review (Doc. 145) is **DENIED.**

**Done and Ordered** in Fort Myers, Florida on July 22, 2022.

*/s/ Kyle C. Dudek*
Kyle C. Dudek
United States Magistrate Judge

11