## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DIANE BARTHOLOMEW, *et al.*,

      Plaintiffs,

                                  CASE NO.:  2:19-cv-00695- JLB-KCD

v.

LOWE'S HOME CENTERS, LLC,

      Defendant.

_____/

## JOINT MOTION FOR APPROVAL OF COLLECTIVE ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs Diane Bartholomew and Michael Sherry ("Named Plaintiffs") and the original opt-in Plaintiffs Willis Pelton, Jason Slater and Mark Easterling ("Original Opt-In Plaintiffs") and Defendant Lowe's Home Centers, LLC ("Defendant" or "Lowe's") jointly request that this Court preliminarily approve their settlement of the conditionally certified collective age discrimination claim and authorize notice of the settlement be sent to the opt-in plaintiffs consistent with the terms of the settlement agreement.

### I.    Procedural History

In this action, Plaintiffs challenge Lowe's decision to end a legacy compensation program (the "Allowance").  In their Collective Action Complaint filed on September 20, 2019, Plaintiffs alleged that ending the Allowance

constituted disparate treatment based on age and had a disparate impact based on age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. (the "ADEA"). Lowe's has denied and continues to deny that it unlawfully discriminated against Plaintiffs because of their age in any way.

On January 21, 2020, the Court dismissed Plaintiffs' disparate treatment claim and allowed the disparate impact claim to proceed. In their Amended Complaint filed February 4, 2020, Plaintiffs continued to pursue their ADEA disparate impact claim, on behalf of themselves and all others similarly situated (the "Claim"), and added state common law quasi-contract claims of Contract Implied in Fact/Quantum Meruit and Contract Implied in Law/Unjust Enrichment.

On August 13, 2021, the Court granted conditional certification of Plaintiffs' ADEA claim pursuant to 29 U.S.C. § 216(b) and denied class certification of Plaintiffs' common law quasi contract claims.  The Court conditionally certified the following collective:

> All persons employed by Defendant in an hourly position that worked for Defendant prior to February 11, 2012 and received an Allowance or were eligible to receive an allowance through February 1, 2020, that were born on or before August 1, 1979. . . . These persons needed to work for Defendant in an hourly position and needed to have received the Allowance, at least through the date of Defendant's decision to eliminate the Allowance (approximately August 1, 2019) . . . .

Court-approved notice of the right to opt-into the ADEA disparate impact

claim was sent to the putative collective members on February 14, 2022. 2,197 individuals who were eligible to opt into the action submitted opt-in forms (or, in one case, an email consenting to opt in) prior to December 22, 2022 ("Opt-In Plaintiffs").[1]

At appropriate points in this litigation the parties have explored settlement in a good-faith effort to reach a fair and reasonable resolution of this matter. On June 27, 2022, the parties held a full-day mediation session with mediator Marlene Quintana of GrayRobinson, P.A. The parties had additional conferences with Ms. Quintana throughout the summer of 2022. On August 18, 2022, the parties reached an agreement in principle to settle the Claim of the Plaintiffs and Opt-In Plaintiffs. In addition, the parties reached a separate agreement which is not the subject of this motion to resolve the state common law quasi-contract claims of the Named Plaintiffs and Original Opt-In Plaintiffs that were not certified by the Court. On August 22, 2022, the Court stayed the Action to allow the parties time to finalize the details of the settlement agreement. The parties signed the settlement agreement in December 2022, and filed a joint motion for preliminary approval of that settlement agreement on December 28, 2022 (Doc. 185). After two status

---

[1] The parties have agreed to include the 2,197 individuals identified on Exhibit A of the Amended Settlement Agreement in the settlement. The parties reserve their right to address whether these individuals should be permitted to join the collective if the Amended Settlement Agreement becomes null or void for any reason.

conferences with the Court regarding the settlement agreement, the parties signed an Amended Settlement Agreement (attached hereto as Exhibit 1) on January 31, 2023.

To the extent this Court requires final certification of the collective action prior to approving  the parties' settlement,[2] the parties stipulate, for settlement purposes only, that the Original Opt-In Plaintiffs and the Opt-In Plaintiffs  are similarly situated to the Named Plaintiffs under 29 U.S.C. Section 216(b), and further stipulate, for settlement purposes only, to final certification of the collective. *See e.g. Hosier, et. al. v. Mattress Firm, Inc.,* Case No.: 3:10-cv-294-J-32JRK, 2012 WL 2813960 *3 (M.D. Fla. June 8, 2012) (court granted final certification by agreement of the parties).

## II.     Legal Standard

Settlements are in the interests of judicial efficiency and economy. There is a "strong judicial policy that favors settlements, particularly where complex class [or collective] action litigation is concerned," as the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefits the

---

[2] *Compare Lytle v. Lowes Home Centers, Inc.,* Case No.: 8:12-cv-1848-T-33TBM, 2014 WL 6469428 (M.D. Fla. Nov. 17, 2014) (approving conditionally certified collective action without final approval); *In re Wells Fargo Wage & Hour Employment Practices Litigation,* 18 F. Supp. 3d 844, 853 (S.D. Tex 2014) (final certification of a collective action is not necessary prior to approval of a FLSA settlement); *accord Vassallo, et. al. v. Goodman Networks, Inc.,* Case No.: 4:15-cv-97-LG-CMC, 2016 WL 6037847 (E.D. Tex. Oct. 14, 2016) *with Ruddell, et. al.  v.  Manfre,* Case No.: 3:14-cv-873-J-34MCR,  2015  WL  7252947  (M.D.  Fla.  Nov.  17, 2015) ("Prior to approving a class settlement under the FLSA, the Court must determine whether final certification is appropriate.").

class could hope to obtain. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (public policy encourages settlement of FLSA litigation).

Collective age discrimination actions under the ADEA are "enforced using certain of the powers, remedies, and procedures of the FLSA." *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 298-99 (N.D. Cal 1991). Therefore, "Plaintiffs wishing to sue as a class under ADEA must utilize the opt-in class mechanism provided in 29 U.S.C. § 216(b) instead of the opt-out class procedure provided in Fed. R. Civ. P. 23." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). The FLSA's collective action provision prohibits employees from becoming "a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

"[W]hile Rule 23 expressly requires that courts review settlement agreements that bind class members for fairness, reasonableness, and adequacy, there is no such statutory requirement in the FLSA or the ADEA." *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 6606248, at *2 (N.D. Cal. Dec. 17, 2018); *see also Woodall v. Drake Hotel, Inc.*, 913 F.2d 447, 450 (7th Cir. 1990). Because of certain unique aspects of the FLSA, the Eleventh Circuit in *Lynn's Food Stores* held that FLSA settlements require supervision of either the district court or

the Secretary of Labor and an FLSA collective action settlement may be approved if it constitutes "a fair and reasonable resolution of a bona fide dispute." *See* 679 F.2d at 1352-53 and 1355.  Although not mandatory in the context of a collective ADEA claim, court approval is appropriate, *Woodall*, 913 F.2d at 450-51, *Heath v. Google LLC*, No. 15-CV-01824-BLF, 2019 WL 3842075 (N.D. Cal. Aug. 15, 2019), *Dallas v. Alcatel-Lucent USA, Inc.*, 2:09-cv-14596-NGE-RSW, Doc. 92 (E.D. Mich. Aug. 13, 2013), *Cavanaugh v. Sprint/United Mgmt. Co.*, No. 1:04-CV-3418-BBM, Doc. 487 (N.D. Ga. Jul. 27, 2006), and the parties seek approval from the court as a condition of the Amended Settlement Agreement.

### III.    Summary of Settlement Terms and Procedure

As set out in detail in the Amended Settlement Agreement, attached hereto as Exhibit 1, Lowe's has agreed to pay up to the total sum of $400,000 ("Settlement Payment") to settle the Claim and all age discrimination claims arising out of the ending of the Allowance being pursued by the Named Plaintiffs and the Opt-In Plaintiffs.  The Settlement Payment satisfies in full: (a) the individual awards to Plaintiffs and Opt-In Plaintiffs and all payroll taxes associated therewith; (b) all attorneys' fees, costs, and expenses; and (c) all costs of administration of the settlement.  Of the total Settlement Payment, $219,900.00 will be distributed to the Plaintiffs and the non-withdrawing Opt-In Plaintiffs proportionally to the amount of the annual Allowance they

received ("Individual Award").  Counsel for Plaintiffs will be paid $130,100.00 for their attorneys' fees, costs, and litigation-related expenses associated with the Claim.  This relief will be in final settlement of the Claim by Plaintiffs and non-withdrawing Opt-In Plaintiffs against Lowe's as set forth in the Amended Settlement Agreement.

The settlement approval procedure set forth in the Amended Settlement Agreement has several steps:

1. The first step, which is the subject of the instant motion, is to ask the Court to find that: (a) the settlement is reasonable, adequate, fair and consistent with applicable law; (b) the form of Notice of the settlement (attached hereto as Exhibit 2) ("Notice") is, under the circumstances, the most effective and practicable notice of the settlement and final approval hearing to all Opt-in Plaintiffs and sufficient notice for all purposes; and (c) that the terms of the Amended Settlement Agreement and Notice comply fully with the Older Worker Benefit Protection Act, 29 U.S.C. § 626(f), such that any Opt-In Plaintiff who does not withdraw from the settlement will be bound by the Amended Settlement Agreement, including its Release, Waiver and Bar provision, and the dismissal with prejudice of the Claim if the Court grants final approval of the settlement. *See* Exhibit 1 at ¶ 1.a.

2.      Within seven business days of the entry of the preliminary approval order by the Court, the Settlement Administrator shall mail the Notice of Settlement to each Plaintiff and Opt-In Plaintiff.  *Id.* at ¶ 4.a.

3.      As explained in the Notice, Opt-In Plaintiffs may withdraw from the settlement, by emailing, faxing, or mailing written notice with Simpluris that he or she wishes to withdraw not later than 30 calendar days from the date the Notice was mailed and appearing in person or through counsel at the final approval hearing.  An Opt-In Plaintiff who properly withdraws may continue to pursue his or her disparate impact age-discrimination claim on an individual (non-collective) basis related to Lowe's decision to end the Allowance on an expedited schedule set at the final approval hearing.  Any Opt-In Plaintiff who fails to withdraw shall be bound by the Amended Settlement Agreement, including the Release, Waiver and Bar provision in Paragraph 2, and the dismissal with prejudice of the Claim if the Court grants final approval.  *Id.* at ¶ 4.e.  In the unlikely event, a significant number of Opt-In Plaintiffs withdraw, Lowe's has the right to void the agreement up to three business days after the final approval hearing.  *Id.* at ¶ 5.

4.      Opt-In Plaintiffs who do not withdraw from this Action may object to all or any part of this settlement by emailing, faxing, or mailing a written objection under oath to Simpluris not later than 30 calendar days from the date the

Notice was mailed. Non-withdrawing Opt-In Plaintiffs who have properly and timely submitted objections may appear at the final approval hearing. *Id.* at ¶ 4.d.

5.     Counsel for Plaintiffs shall file all timely objections and written notices of withdrawal from the settlement with the Court at least fourteen (14) days before the final approval hearing.

6.     In advance of the final approval hearing, the parties will file a joint motion for preliminary approval ask the Court to enter judgment dismissing with prejudice the disparate impact age discrimination claim of all Plaintiffs and Opt-In Plaintiffs, with the sole exception of Opt-In Plaintiffs who properly and timely withdraw, which withdrawing Opt-In Plaintiffs may continue to litigate their disparate impact age discrimination claim solely as individual (non-collective) basis. *Id.* at ¶ 1.a-b.

## IV.    The Settlement Should be Approved

The determination of the fairness of a settlement is left to the sound discretion of the trial court. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990). When exercising its discretion, a court should always review the proposed settlement in light of the strong judicial policy that favors settlements. *In re Chicken Antitrust Litigation*, 669 F.2d 228, 238 (5th Cir.1982). "Litigants should be encouraged to determine their respective rights between themselves." *Cotton*

*v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977).  Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, *Cotton*, 559 F.2d at 1331, and achieve the speedy resolution of justice, for a "just result is often no more than an arbitrary point between competing notions of reasonableness," *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1322, 1325 (5th Cir.1981), *cert. denied*, 456 U.S. 998, 102 S.Ct. 2283 (1982).

Here, the parties negotiated the agreement in good faith and at arm's length. Prior to the settlement, the parties engaged in extensive investigation and discovery so that counsel—experienced employment attorneys—could assess the strengths and weaknesses of the Claim and the benefits of settlement.  The settlement is fair and resolves claims which would have been inordinately costly and lengthy to litigate. Accordingly, the Amended Settlement Agreement should be approved because the settlement resolves a bona fide dispute and the proposed settlement is fair and equitable.

### A.    The Settlement Resolves a Bona Fide Dispute.

The Amended Settlement Agreement resolves a bona fide dispute concerning liability under the ADEA.  As illustrated in the briefing on the various motions submitted to the Court through the course of this litigation, the case involves genuinely disputed factual and legal issues, including but not limited to whether Plaintiffs' disparate-impact theory is cognizable as a matter of law and

whether Lowe's decision to end the Allowance was based on a reasonable factor other than age which provides a complete defense to the Claim.  As Lowe's has maintained throughout this case, if Plaintiffs' disparate impact claim—which is based on the fact that group of employees who were receiving the Allowance included more employees over the age of 40 than under the age of 40—were cognizable, then an employer could never reduce a compensation program unless the population of employees benefitting from the program are under 40 than over 40 years of age.  The ADEA does not mandate such a result.  *See* Doc. 96 at 5-11. Plaintiffs disagree with Lowe's arguments, but it is clear that these and other issues would continue to be the subject of vigorous debate should this litigation continue.

### B.     The Settlement is Fair and Equitable.

Courts evaluating the reasonableness of a collective action settlement often consider the factors used to evaluate the reasonableness of a Rule 23 class action settlement, *K.H.*, 2018 U.S. Dist. LEXIS 125459, at *8-9, such as:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Van Kempen*, 2017 U.S. Dist. LEXIS 137182, at *11. "Not all of these factors will apply to every … settlement, and in certain circumstances, 'one factor alone may prove determinative in finding sufficient grounds for court approval.'" *Ching v.*

*Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002, at *9 (N.D. Cal. June 27, 2014) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

These factors support approval of the settlement.  First, "the Court must balance against the risks of continued litigation, including the strengths and weaknesses of Plaintiff's case, the benefits afforded to class members, and the immediacy and certainty of a recovery." *Ching*, 2014 U.S. Dist. LEXIS 89002, at *10. Plaintiffs' case faces a number of risks in litigation.  As discussed in the bona fide dispute discussion above, Lowe's is confident that Plaintiffs' disparate impact theory is not cognizable.  Moreover, even if Claim were cognizable, Lowe's has a complete defense because the elimination of the Allowance was based on a reasonable factor other than age.  Accordingly, Lowe's believes that Plaintiffs' Claim would be ripe for dismissal on summary judgment after the close of discovery.  When considering the considerable risks of litigation, conferring an immediate and certain benefit on class members is preferable.

Second, the "the risk, expense, complexity, and likely duration of further litigation" favors settlement. *Van Kempen*, 2017 U.S. Dist. LEXIS 137182, at *11; *see also Florida Trailer and Equipment Co v. Deal*, 284 F2d 567, 571 (5th Cir 1960) (finding

avoidance of wasteful litigation and expense are two factors which support the decision to compromise). "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Ching*, 2014 U.S. Dist. LEXIS 89002, at *13 (*quoting Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526). Settlement is favored where, as here, "significant procedural hurdles remain." *Id.* In addition to the litigation risks discussed above, if this case is not resolved, significant and complex discovery and briefing would have to be completed, including: Plaintiffs' objections to the Magistrate Judge's order denying the motion to compel the production of documents on Lowe's privilege log (Doc. 160) and Plaintiffs' motion to compel the production of additional documents (Doc. 161); an anticipated motions related to Plaintiffs' desire to depose Lowe's senior leadership; expert discovery; briefing regarding final certification or decertification of the collective; Daubert motions; and dispositive motions. All of that would be before any trial, which necessarily would require substantial resources and numerous witnesses, including considerable expert testimony on statistical analyses. This collective action is risky, expensive, and complex, and would take years to resolve. "Avoiding such . . . expenditure of resources and time would benefit all parties, as well as the court." *Id.* This factor strongly supports settlement.

Third, "the risk of maintaining class action status throughout the trial"

favors settlement. *Van Kempen*, 2017 U.S. Dist. LEXIS 137182, at *11.  In granting Plaintiffs' motion for conditional certification, the Court explicitly noted that initial certification is subject to "a fairly lenient standard" that "typically results in conditional certification." (Doc. 116, p. 4.) The Court's consideration of final certification will be subject to a more stringent standard.  Further, even if the action were not decertified, Plaintiffs may face an appeal of the Court's order denying decertification by Lowe's.

Fourth, the amount offered in settlement is substantial.  Although the determination of a reasonable settlement is not susceptible to a mathematical equation, *Newman v. Stein*, 464 F.2d 693 (2d Cir 1972), the sum Lowe's has agreed to pay is considerable in light of the weaknesses of the Claim.  Indeed, Lowe's disputes that Plaintiffs were the victims of age discrimination and are entitled to any damages at all.  Due to the risks of establishing liability and damages, as well as the costs and delays involved in further litigation, counsel for both sides believe this settlement is well within the range of reasonableness.

Fifth, "the extent of discovery completed, and the stage of the proceedings" favors settlement. *Van Kempen*, 2017 U.S. Dist. LEXIS 137182, at *11.  The parties reached a settlement after over two and a half years of discovery, which included production of thousands of pages of discovery by Lowe's, the completion of written discovery and document production from Plaintiffs, the deposition of

multiple parties and witnesses, and multiple discovery disputes.  Based on this information, counsel for both sides are knowledgeable about the strengths and weaknesses of the Claim.  The results achieved are consistent with that knowledge. The parties had sufficient information to make an informed decision about the merits of the case, supporting approval.  *Ching*, 2014 U.S. Dist. LEXIS 89002, at *16-17.

Sixth, counsel for the parties, who are experienced in employment and class litigation, reached the settlement as a result of arms-length, non-collusive negotiations over a period of months with the assistance of an experienced mediator.  In appraising the fairness of a settlement, the view of experienced counsel favoring the settlement is "entitled to considerable weight." *In re Saxon Sec Litig.*, 644 F. Supp. 465 (S.D. N.Y. 1985).  Here, counsel believe that the settlement is fair and reasonable.  Plaintiffs' counsel has handled many group, collective, and class actions. Defendant's counsel is also very experienced and has represented Defendant in a variety of litigation matters nationwide.  Thus, no basis exists to reject the settlement reached by counsel in this case.

Finally, regarding "the reaction of the class members to the proposed settlement," the parties' Amended Settlement Agreement provides a process through which the Opt-In Plaintiffs will receive notice of the settlement terms and an opportunity to object or withdraw.  The proposed Notice (Exhibit 2) identifies

the nature of the action, allocation of the Settlement Payment, and explains the procedure making objections or withdrawing.  The Notice, although detailed, has been drafted in terms easily understood by laypersons.  Thus, the "reaction of the class members" has been appropriately considered in the process, and they will have an opportunity to be heard when the Court considers final approval.

Thus, these factors demonstrate that the settlement is fair and reasonable and should be approved.

### C.   The Terms of the Amended Settlement Agreement Provide for a Knowing and Voluntary Waiver of the Claim.

The Older Worker Benefit Protection Act ("OWBPA") requires that waivers of rights under the ADEA be knowing and voluntary, *see* 29 U.S.C. § 626(f)(1), and that to be considered knowing and voluntary:

(i)   the waiver must be part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;

(ii)   the waiver must specifically refer to rights or claims arising under this chapter;

(iii)   the individual does not waive rights or claims that may arise after the date the waiver is executed;

(iv)   the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(v)   the individual must be advised in writing to consult with an attorney prior to executing the agreement; and

(vi)    the individual must be given a reasonable period of time within which to consider the settlement agreement.

*Id.* at 626(f)(2) incorporating (f)(1)(A)-(E).

Here, the Amended Settlement Agreement and Notice comply fully with the OWBPA.   Plaintiffs' ADEA waiver is part of the Amended Settlement Agreement and is explained in the Notice in plain language. Non-withdrawing Opt-In Plaintiffs are only waiving claims "that were or could have been raised in this Action."   *See* Exhibit 1 § 2.   They not waiving claims that may arise in the future.   Plaintiffs' wavier is being provided in exchange for a monetary settlement. Plaintiffs are advised by the Notice to consult with an attorney regarding the settlement.   *See* Exhibit 2 § V.   Finally, Plaintiffs have been given a reasonable period of time—30 days—to withdraw from the settlement.   *Id.* § III.C.

In order to confirm compliance with the OWBPA, the parties ask the Court to find that the terms of the Amended Settlement Agreement and Notice comply fully with the OWBPA and confirm that Agreement any Opt-In Plaintiff who does not withdraw from the settlement will be bound by the Amended Settlement Agreement, including its Release, Waiver and Bar provision, and the dismissal with prejudice of the Claim if the Court grants final approval of the settlement.

## V.    Conclusion

For the foregoing reasons, the parties jointly request that the Court approve

the settlement and issue an order in the form attached as Exhibit 3, which reflects findings that: (a) the settlement is reasonable, adequate, fair and consistent with applicable law; (b) the form of Notice of Settlement is, under the circumstances, the most effective and practicable notice of the settlement and final approval hearing to all Opt-in Plaintiffs and sufficient notice for all purposes; and (c) that the terms of the Agreement and Notice comply fully with the OWBPA such that any Opt-In Plaintiff who does not withdraw from the settlement will be bound by the Amended Settlement Agreement, including its Release, Waiver and Bar provision, and the dismissal with prejudice of the Claim if the Court grants final approval of the settlement.

Dated: February 6, 2023

SALAS LAW FIRM, P.A.

*/s/ Michael G. Green*
Michael G. Green II
michael@salaslawfirmpa.com
John P. Salas
jp@salaslawfirmpa.com
2601 E. Oakland Park Boulevard
Suite 406
Fort Lauderdale, Florida 33308
*Counsel for Plaintiffs*

McGUIREWOODS LLP

*/s/ Elena D. Marcuss*
Thomas Brice
Florida Bar No. 0018139

50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
Telephone:  (904) 798-2629
Facsimile:   (904) 360-6335
tbrice@mcguirewoods.com

Elena D. Marcuss
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202
Telephone:  (410) 659-4454
Facsimile:   (410) 659-4547
emarcuss@mcguirewoods.com

*Counsel for Defendant Lowe's Home Centers, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on February 6, 2023, a true copy of the foregoing was filed with the Court using the CM/ECF system, which will send notice to the following:

Michael G. Green II, Esq.
michael@jpsalaslaw.com
John P. Salas, Esq.
jp@jpsalaslaw.com
SALAS LAW FIRM, P.A.
2601 E. Oakland Park Boulevard
Suite 406
Fort Lauderdale, Florida 33308
*Counsel for Plaintiff*

*/s/ Elena D. Marcuss*
Attorney