## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DIANE BARTHOLOMEW, *et al.*,

      Plaintiffs,

                            CASE NO.:  2:19-cv-00695- JLB-KCD

v.

LOWE'S HOME CENTERS, LLC,

      Defendant.

_____/

## JOINT MOTION FOR FINAL APPROVAL OF COLLECTIVE ACTION
## SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW

      Plaintiffs Diane Bartholomew and Michael Sherry ("Named Plaintiffs") and the original opt-in Plaintiffs Willis Pelton, Jason Slater and Mark Easterling ("Original Opt-In Plaintiffs") and Defendant Lowe's Home Centers, LLC ("Defendant" or "Lowe's") jointly request that this Court finally approve their settlement of the collective disparate impact age discrimination claim in this action and enter judgment dismissing with prejudice the disparate impact age discrimination claim of all Plaintiffs and Opt-In Plaintiffs, with the sole exception of Opt-In Plaintiffs who properly and timely submitted a withdrawal notice, appear at the final approval hearing, and agree to a schedule to govern the reminder of that Opt-In Plaintiff's individual claim ("Non-Withdrawing Opt-In Plaintiffs").

## I.    Introduction

On February 6, 2023, the parties filed a Joint Motion for Approval of Collective Action Settlement and Incorporated Memorandum of Law (Doc. No. 196.)  The Court granted preliminary approval of the settlement on February 16, 2023, and approved a revised Notice on February 23, 2023.  (Doc. Nos. 198 and 201.)  The Notice was sent to the Opt-In Plaintiffs on March 1, 2023.  (Doc. No. 202-2, ¶ 8.)  Only six Opt-In Plaintiffs have indicated that they would like to withdraw from the settlement and only one individual has filed an objection to the settlement.

For the reasons set forth below, the parties respectfully request that the Court grant final approval of the settlement of the collective disparate impact claim under the Age Discrimination in Employment Act of 1967 ("ADEA") – Count I of the First Amended Complaint ("Amended Complaint"), approve an award of attorneys' fees and expenses, and dismiss Count I with prejudice for all Plaintiffs and Non-Withdrawing Opt-In Plaintiffs.

## II.    Procedural History

In this action, Plaintiffs challenge Lowe's decision to end a legacy compensation program (the "Allowance").  In their Collective Action Complaint filed on September 20, 2019, Plaintiffs alleged that ending the Allowance constituted disparate treatment based on age and had a disparate impact based on

age in violation of the ADEA. Lowe's has denied and continues to deny that it unlawfully discriminated against Plaintiffs because of their age in any way.

On January 21, 2020, the Court dismissed Plaintiffs' disparate treatment claim and allowed the disparate impact claim to proceed. In their Amended Complaint filed February 4, 2020, Plaintiffs continued to pursue their ADEA disparate impact claim on behalf of themselves and all others similarly situated (the "Claim"), and added state common law quasi-contract claims of Contract Implied in Fact/Quantum Meruit and Contract Implied in Law/Unjust Enrichment.

On August 13, 2021, the Court granted conditional certification of Plaintiffs' ADEA claim pursuant to 29 U.S.C. § 216(b) and denied class certification of Plaintiffs' common law quasi contract claims.  The Court conditionally certified the following collective:

> All persons employed by Defendant in an hourly position that worked for Defendant prior to February 11, 2012 and received an Allowance or were eligible to receive an allowance through February 1, 2020, that were born on or before August 1, 1979. . . . These persons needed to work for Defendant in an hourly position and needed to have received the Allowance, at least through the date of Defendant's decision to eliminate the Allowance (approximately August 1, 2019) .
> . . .

Court-approved notice of the right to opt-into the ADEA disparate impact claim was sent to the putative collective members on February 14, 2022. 2,197 individuals who were eligible to opt into the action submitted opt-in forms (or, in

3

one case, an email consenting to opt in) prior to December 22, 2022 ("Opt-In Plaintiffs").  (Doc. No. 196-1, Ex. A.)

On June 27, 2022, the parties held a full-day mediation session with mediator Marlene Quintana of GrayRobinson, P.A.  The parties had additional conferences with Ms. Quintana throughout the summer of 2022.  On August 18, 2022, the parties reached an agreement in principle to settle the Claim of the Plaintiffs and Opt-In Plaintiffs. In addition, the parties reached a separate agreement that is not the subject of this motion to resolve the state common law quasi-contract claims of the Named Plaintiffs and Original Opt-In Plaintiffs that were not certified by the Court.  On August 22, 2022, the Court stayed the action to allow the parties time to finalize the details of the settlement agreement.

The parties signed the settlement agreement in December 2022, and filed a joint motion for preliminary approval of that settlement agreement on December 28, 2022 (Doc. No. 185). After two conferences with the Court regarding the settlement agreement, the parties signed an Amended Settlement Agreement on January 31, 2023.

On February 6, 2023, the parties filed a Joint Motion for Approval of Collective Action Settlement and Incorporated Memorandum of Law (Doc. No. 196.)  The Court granted preliminary approval of the settlement on February 16, 2023, and approved a revised Notice on February 23, 2023.  (Doc. Nos. 198 and

201.) The Court's February 23, 2023 order made it clear that "[a]ny Opt-In Plaintiff who elects to withdraw must appear in person or through counsel at the final approval hearing where the Court can discuss the remainder of that individual's claim against Lowe's." (Doc. No. 201.)

The Notice was sent to the Opt-In Plaintiffs, Original Opt-In Plaintiffs, and Named Plaintiffs on March 1, 2023. (Doc. No. 202-2, ¶ 8.) For Opt-In Plaintiffs whose Notices were not returned as undeliverable, the deadline to submit objections to the settlement or notice of a wish to withdraw from the settlement was March 31, 2023. (*Id.*,¶ 10.)

Six of the Notices could not be delivered. (*Id.*, ¶ 9.) Eleven Notices were returned and remailed. Of those, five were to the Named Plaintiffs care of Plaintiffs' counsel and were remailed on March 16 and 23. The other six were remailed as follows: three on March 16; two on March 23; and one on April 6. Thus, the deadline to submit an objection to the settlement or notice of a wish to withdraw from the settlement has passed for five of the six Opt-In Plaintiffs whose Notice was remailed.

As of the filing of this motion, one individual has submitted an objection to the settlement and six individuals have submitted notice of a wish to withdraw from the settlement.  (*Id.*, ¶¶ 11, 12.)

5

### III. Legal Standard

Settlements are in the interests of judicial efficiency and economy. There is a "strong judicial policy that favors settlements, particularly where complex class [or collective] action litigation is concerned," as the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefits the class could hope to obtain. *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) (public policy encourages settlement of FLSA litigation).

Collective age discrimination actions under the ADEA are "enforced using certain of the powers, remedies, and procedures of the FLSA." *Church v. Consolidated Freightways, Inc.*, 137 F.R.D. 294, 298-99 (N.D. Cal 1991). Therefore, "Plaintiffs wishing to sue as a class under ADEA must utilize the opt-in class mechanism provided in 29 U.S.C. § 216(b) instead of the opt-out class procedure provided in Fed. R. Civ. P. 23." *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001). The FLSA's collective action provision prohibits employees from becoming "a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

"[W]hile Rule 23 expressly requires that courts review settlement agreements that bind class members for fairness, reasonableness, and adequacy,

there is no such statutory requirement in the FLSA or the ADEA." *K.H. v. Sec'y of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 6606248, at *2 (N.D. Cal. Dec. 17, 2018); *see also Woodall v. Drake Hotel, Inc.*, 913 F.2d 447, 450 (7th Cir. 1990). Because of certain unique aspects of the FLSA, the Eleventh Circuit in *Lynn's Food Stores* held that FLSA settlements require supervision of either the district court or the Secretary of Labor and an FLSA collective action settlement may be approved if it constitutes "a fair and reasonable resolution of a bona fide dispute." *See* 679 F.2d at 1352-53 and 1355. Although not mandatory in the context of a collective ADEA claim, court approval is appropriate, *Woodall*, 913 F.2d at 450-51, *Heath v. Google LLC*, No. 15-CV-01824-BLF, 2019 WL 3842075 (N.D. Cal. Aug. 15, 2019), *Dallas v. Alcatel-Lucent USA, Inc.*, 2:09-cv-14596-NGE-RSW, Doc. No. 92 (E.D. Mich. Aug. 13, 2013), *Cavanaugh v. Sprint/United Mgmt. Co.*, No. 1:04-CV-3418-BBM, Doc. 487 (N.D. Ga. Jul. 27, 2006).

## IV.   Summary of Settlement Terms

As set out in detail in the Amended Settlement Agreement (Doc. No. 286-1), Lowe's has agreed to pay up to the total sum of $400,000 ("Settlement Payment") to settle the Claim and all age discrimination claims arising out of the ending of the Allowance being pursued by the Named Plaintiffs and the Opt-In Plaintiffs. The Settlement Payment satisfies in full: (a) the individual awards to Plaintiffs and Opt-In Plaintiffs and all payroll taxes associated therewith; (b) all attorneys' fees,

7

costs, and expenses; and (c) all costs of administration of the settlement. Of the total Settlement Payment, $219,900.00 will be distributed to the Plaintiffs and the Non-Withdrawing Opt-In Plaintiffs proportionally to the amount of the annual Allowance they received ("Individual Award"). Counsel for Plaintiffs will be paid $130,100.00 for their attorneys' fees, costs, and litigation-related expenses associated with the Claim. $50,000 will be distributed to Simpluris to reimburse it for the costs for services in connection with the administration of the settlement. (Doc. No. 202-2, ¶ 13.) This relief will be in final settlement of the Claim by Plaintiffs and Non-Withdrawing Opt-In Plaintiffs against Lowe's as set forth in the Amended Settlement Agreement.

## V.    The Settlement Should be Approved

The determination of the fairness of a settlement is left to the sound discretion of the trial court. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 538 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990). When exercising its discretion, a court should always review the proposed settlement in light of the strong judicial policy that favors settlements. *In re Chicken Antitrust Litigation*, 669 F.2d 228, 238 (5th Cir.1982). "[L]itigants should be encouraged to determine their respective rights between themselves." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.1977). Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, *Cotton*, 559

F.2d at 1331, and achieve the speedy resolution of justice, for a "just result is often no more than an arbitrary point between competing notions of reasonableness." *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1322, 1325 (5th Cir.1981), *cert. denied*, 456 U.S. 998, 102 S.Ct. 2283 (1982).

Here, the parties negotiated the agreement in good faith and at arm's length. Prior to the settlement, the parties engaged in extensive investigation and discovery so that counsel—experienced employment attorneys—could assess the strengths and weaknesses of the Claim and the benefits of settlement. The settlement is fair and resolves claims which would have been inordinately costly and lengthy to litigate. Accordingly, the Amended Settlement Agreement should be approved because the settlement resolves a bona fide dispute and the proposed settlement is fair and equitable.

### 1.   The Settlement Resolves a Bona Fide Dispute

The Amended Settlement Agreement resolves a bona fide dispute concerning liability under the ADEA. As illustrated in the briefing on the various motions submitted to the Court through the course of this litigation, the case involves genuinely disputed factual and legal issues, including but not limited to whether Plaintiffs' disparate-impact theory is cognizable as a matter of law and whether Lowe's decision to end the Allowance was based on a reasonable factor other than age, which provides a complete defense to the Claim. As Lowe's has

maintained throughout this case, if Plaintiffs' disparate impact claim—which is based on the fact that group of employees who were receiving the Allowance included more employees over the age of 40 than under the age of 40—were cognizable, then an employer could never reduce a compensation program unless the population of employees benefitting from the program are under 40 years of age.  The ADEA does not mandate such a result.  (*See* Doc. No. 96, p. 5-11.) Plaintiffs disagree with Lowe's arguments, but it is clear that these and other issues would continue to be the subject of vigorous debate should this litigation continue.

### 2.    The Settlement is Fair and Equitable

Courts evaluating the reasonableness of a collective action settlement often consider the factors used to evaluate the reasonableness of a Rule 23 class action settlement, *K.H.*, 2018 WL 6606248, at *3, such as:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Van Kempen v. Matheson Tri-Gas, Inc.*, No. 15-CV-00660-HSG, 2017 WL 3670787, at *4 (N.D. Cal. Aug. 25, 2017). "Not all of these factors will apply to every … settlement, and in certain circumstances, 'one factor alone may prove determinative in finding sufficient grounds for court approval.'" *Ching v. Siemens*

*Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *3 (N.D. Cal. June 27, 2014) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004)). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

These factors support approval of the settlement. First, "the Court must balance against the risks of continued litigation, including the strengths and weaknesses of Plaintiff's case, the benefits afforded to class members, and the immediacy and certainty of a recovery." *Ching*, 2014 WL 2926210, at *4. Plaintiffs' case faces a number of risks in litigation. As discussed in the bona fide dispute discussion above, Lowe's is confident that Plaintiffs' disparate impact theory is not cognizable. Moreover, even if the Claim were cognizable, Lowe's has a complete defense because the elimination of the Allowance was based on a reasonable factor other than age. Accordingly, Lowe's believes that Plaintiffs' Claim would be ripe for dismissal on summary judgment after the close of discovery. When considering the considerable risks of litigation, conferring an immediate and certain benefit on class members is preferable.

Second, the "the risk, expense, complexity, and likely duration of further litigation" favors settlement. *Van Kempen*, 2017 WL 3670787, at *4; *see also Florida Trailer and Equipment Co v. Deal*, 284 F2d 567, 571 (5th Cir 1960) (finding avoidance

of wasteful litigation and expense are two factors which support the decision to compromise). "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Ching*, 2014 WL 2926210 , at *4 (quoting *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)). Settlement is favored where, as here, "significant procedural hurdles remain." *Id.* In addition to the litigation risks discussed above, if this case is not resolved, significant and complex discovery and briefing would have to be completed, including: Plaintiffs' objections to the Magistrate Judge's order denying the motion to compel the production of documents on Lowe's privilege log (Doc. No. 160) and Plaintiffs' motion to compel the production of additional documents (Doc. No. 161); anticipated motions related to Plaintiffs' desire to depose Lowe's senior leadership; expert discovery; briefing regarding final certification or decertification of the collective; Daubert motions; and dispositive motions. All of that would be before any trial, which necessarily would require substantial resources and numerous witnesses, including considerable expert testimony on statistical analyses. This collective action is risky, expensive, and complex, and would take years to resolve. "Avoiding such . . . expenditure of resources and time would benefit all parties, as well as the court." *Id.* This factor strongly supports

settlement.

Third, "the risk of maintaining class action status throughout the trial" also favors settlement. *Van Kempen*, 2017 WL 3670787, at *4. In granting Plaintiffs' motion for conditional certification, the Court explicitly noted that initial certification is subject to "a fairly lenient standard" that "typically results in conditional certification." (Doc. No. 116, p. 4.) The Court's consideration of final certification will be subject to a more stringent standard. Further, even if the action were not decertified, Plaintiffs may face an appeal of the Court's order denying decertification by Lowe's.

Fourth, the amount offered in settlement is substantial. Although the determination of a reasonable settlement is not susceptible to a mathematical equation, *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972), the sum Lowe's has agreed to pay is considerable in light of the weaknesses of the Claim. Indeed, Lowe's disputes that Plaintiffs were the victims of age discrimination and are entitled to any damages at all. Due to the risks of establishing liability and damages, as well as the costs and delays involved in further litigation, counsel for both sides believe this settlement is well within the range of reasonableness.

Fifth, "the extent of discovery completed, and the stage of the proceedings" favors settlement. *Van Kempen*, 2017 WL 3670787, at *4. The parties reached a settlement after over two and a half years of discovery, which included production

13

of thousands of pages of discovery by Lowe's, the completion of written discovery and document production from Plaintiffs, the deposition of multiple parties and witnesses, and multiple discovery disputes. Based on this information, counsel for both sides are knowledgeable about the strengths and weaknesses of the Claim. The results achieved are consistent with that knowledge. The parties had sufficient information to make an informed decision about the merits of the case, supporting approval. *Ching*, 2014 WL 2926210 , at *5.

Sixth, counsel for the parties, who are experienced in employment and class litigation, reached the settlement as a result of arms-length, non-collusive negotiations over a period of months with the assistance of an experienced mediator. In appraising the fairness of a settlement, the view of experienced counsel favoring the settlement is "accorded considerable weight." *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010). Here, counsel believe that the settlement is fair and reasonable. Plaintiffs' counsel has handled many group, collective, and class actions. Defendant's counsel is also very experienced and has represented Defendant in a variety of litigation matters nationwide. Thus, no basis exists to reject the settlement reached by counsel in this case.

Finally, the response to the settlement by the Opt-In Plaintiffs has been positive. "In determining whether a proposed settlement is fair, reasonable and

adequate, the reaction of the class is an important factor." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005). "Thus, a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Id.* Out of the 2,197 Opt-In Plaintiffs to whom Notice was sent, only six returned statements indicating that they wanted to withdraw and one individual filed an objection. (Doc. No. 202-2, ¶¶ 11, 12.) Of the six withdrawal notices, only two of them included all of the language required in Section C of the Notice. Moreover, filing a written statement requesting to withdraw from the settlement is only the first step an individual must take to withdraw. The second step is that each individual who wishes to withdraw must also appear in-person at the final approval hearing and agree to a scheduling order to govern the remained of their individual claims.

Even assuming that the Court accepts all six of the statements and each one of those individuals appears at the final approval hearing and agrees to a schedule to complete the litigation of their individual claim, only approximately 0.3% of the Opt-In Plaintiffs would be withdrawing from the settlement. Given that there are almost 2,200 Opt-In Plaintiffs, the small number of statements requesting to withdraw supports approval. *See Lipuma*, 406 F. Supp. 2d at 1324 (approving settlement with 1,159 opt-outs and 41 objections in response to the 8,822,803 notices mailed); *Berman v. Gen. Motors LLC*, No. 2:18-CV-14371, 2019 WL 6163798,

at *6 (S.D. Fla. Nov. 18, 2019) (granting final approval of a settlement where 0.0043 percent of class members submitted objections and one-tenth of one percent of class members opted out of the settlement).

Similarly, the fact that only one objection was submitted further supports a finding that the settlement should be approved. *See Davis v. Dixon*, No. 3:17-CV-820-MMH-PDB, 2022 WL 1267602, at *7 (M.D. Fla. Apr. 28, 2022) (granting final approval of a settlement where fifty-one of the over three hundred men on death row indicated their objection to the settlement).  In addition, the objection, which was submitted by the personal representative of an Opt-In Plaintiff, does not provide any persuasive basis for not approving the settlement because it does not take into account the weaknesses of the Claim and the risk, expense, complexity, and duration of further litigation.

Thus, these factors all demonstrate that the settlement is fair and reasonable and should be approved.

### 3.    The Terms of the Amended Settlement Agreement Provide for a Knowing and Voluntary Waiver of the Claim

The Older Workers Benefit Protection Act ("OWBPA") requires that waivers of rights under the ADEA be knowing and voluntary, *see* 29 U.S.C. § 626(f)(1), and that to be considered knowing and voluntary:

> (i) the waiver must be part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible

to participate;

(ii) the waiver must specifically refer to rights or claims arising under this chapter;

(iii) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(iv) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(v) the individual must be advised in writing to consult with an attorney prior to executing the agreement; and

(vi) the individual must be given a reasonable period of time within which to consider the settlement agreement.

*Id.* at 626(f)(2) incorporating (f)(1)(A)-(E). Here, the Amended Settlement Agreement and Notice comply fully with the OWBPA. The ADEA waiver is part of the Amended Settlement Agreement and was explained in the Notice in plain language. Non-Withdrawing Opt-In Plaintiffs are only waiving claims "that were or could have been raised in this Action." (*See* Doc. No. 196-1, ¶ 2.) They are not waiving claims that may arise in the future. The wavier is being provided in exchange for a monetary settlement. Non-Withdrawing Opt-In Plaintiffs were advised by the Notice to consult with an attorney regarding the settlement. (*See* Doc. No. 200-1, § V.) Finally, Non-Withdrawing Opt-In Plaintiffs were given a reasonable period of time—30 days—to submit a withdrawal statement. (*Id.* at § III.C.) In order to confirm compliance with the OWBPA, the parties ask the Court

to find that the terms of the Amended Settlement Agreement and Notice comply fully with the OWBPA and confirm that any Opt-In Plaintiff who did not withdraw from the settlement will be bound by the Amended Settlement Agreement, including its Release, Waiver and Bar provision, and the dismissal with prejudice of the Claim if the Court grants final approval of the settlement.

## VI.    The Negotiated Award of Attorneys' Fees and Expenses is Reasonable

As prescribed by the settlement agreement and in this Court's preliminary approval order, counsel for Plaintiffs will be paid $130,100.00 out of the Settlement Payment for their time and litigation-related expenses. The Parties agree that the amount is reasonable considering the settlement amount, complexity of the case, and time expended by Plaintiffs' counsel, including for the reasons set forth *supra*. *See supra* (Part V, § 2). As this Court noted previously, the "option [of the Opt-In Plaintiffs] to pursue relief without having to pay the negotiated fees undercuts any fairness reservations" about the amount of fees and expenses allocated to Plaintiffs' counsel. (Doc. No. 198, p. 6) (citing *Freeman v. Trainingwheel Corp., LLC*, No. 2:19-CV-52- FTM-NPM, 2020 WL 7401488, at *3 (M.D. Fla. June 26, 2020)).

In support of the reasonableness of the negotiated fees and expenses, Plaintiffs' counsel submits that from initiating this action in September 2019 until reaching the settlement, Plaintiffs' counsel was continuously engaged in vigorous litigation against Defendant. Prosecuting and settling this action demanded

considerable time and labor, including investigating the claims at issue, motion practice, engaging in extensive fact discovery, attending mediation, and in engaging in several subsequent months of arm's-length negotiations between experienced counsel. Further, Plaintiffs' counsel consulted and retained knowledgeable and qualified experts who engaged in critical analyses regarding the alleged disparate impact claim and damages to help formulate or substantiate the claim in connection with and/or in preparation for class certification motions, dispositive motions, and, ultimately, for trial, assuming this claim reached that point. Plaintiffs' counsel have diverted substantial time and resources to this matter that would otherwise have been spent on other cases. Plaintiffs' counsel devoted over 1,000 attorney hours and over 400 paralegal hours to the prosecution of the claim. Also, Plaintiffs' counsel incurred and paid $43,277.84 in costs in litigating the claim. Accordingly, the amount of time and labor devoted to this case weighs in favor of finding Plaintiffs' Counsels' negotiated fees and expenses are reasonable. *See, e.g., Yates v. Mobile County Personnel Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) ("The expenditure of 1,000 billable hours -- and often in significant blocks of time -- necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work."). Also, Plaintiffs' counsel have received no compensation for this litigation and faced a substantial risk of nonpayment in return for advancing all of the costs and fees. The difficult and contingent nature

of this case demonstrates that the claim was or could be considered undesirable, including due to complicated and uncertain legal questions. In sum, these factors further auger in favor of the fees and expenses being allowed by this Court as part of the parties' agreement.

## VII.    Conclusion

For the foregoing reasons, the parties jointly request that the Court approve the settlement and issue an order in the form attached as Exhibit 1, which reflects findings that: (a) the Amended Settlement Agreement is reasonable, adequate, fair, and consistent with applicable law and is approved; (b) Lowe's shall transfer the Settlement Payment to the Qualified Settlement Fund account established by Simpluris in accordance with the terms of the Amended Settlement Agreement; (c) Plaintiffs' counsel are awarded fees of eighty-six thousand eight hundred twenty-two dollars and sixteen cents ($86,822.16), and costs and expenses of forty-three thousand two hundred seventy-seven dollars and eighty-four cents ($43,277.84), for a total of one hundred thirty thousand one hundred dollars ($130,100.00), which shall be paid from the Qualified Settlement Fund; (d) Simpluris is awarded fifty thousand dollars ($50,000) for its fees and expenses related to the administration of the settlement, which shall be paid from the Qualified Settlement Fund; (e) the terms of the Amended Settlement Agreement and Notice comply fully with the OWBPA; (f) all Plaintiffs and Non-Withdrawing

20

Opt-In Plaintiffs are bound by the Amended Settlement Agreement, including its
Release, Waiver and Bar provision, and are enjoined and permanently barred from
commencing, maintaining, prosecuting, participating in, or permitting to be filed
by any other person on their behalf, any action, suit, or proceeding of any kind
against Defendant or the Released Parties with respect to the Released Claims; and
(g) Count I of the Amended Complaint alleging disparate impact discrimination
under the ADEA is DISMISSED WITH PREJUDICE.

Dated: April 25, 2023

SALAS LAW FIRM, P.A.

/s/ John P. Salas
Michael G. Green II
michael@salaslawfirmpa.com
John P. Salas
jp@salaslawfirmpa.com
2601 E. Oakland Park Boulevard
Suite 406
Fort Lauderdale, Florida 33308
*Counsel for Plaintiffs*

MCGUIREWOODS LLP

/s/ Elena D. Marcuss
Thomas Brice
Florida Bar No. 0018139
50 North Laura Street, Suite 3300
Jacksonville, Florida 32202
Telephone:  (904) 798-2629
Facsimile:  (904) 360-6335
tbrice@mcguirewoods.com

Elena D. Marcuss
500 East Pratt Street, Suite 1000
Baltimore, Maryland 21202
Telephone:  (410) 659-4454
Facsimile:  (410) 659-4547
emarcuss@mcguirewoods.com

*Counsel for Defendant Lowe's Home Centers, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 25, 2023, a true copy of the foregoing was filed with the Court using the CM/ECF system, which will send notice to the following:

> Michael G. Green II, Esq.
> michael@jpsalaslaw.com
> John P. Salas, Esq.
> jp@jpsalaslaw.com
> SALAS LAW FIRM, P.A.
> 2601 E. Oakland Park Boulevard
> Suite 406
> Fort Lauderdale, Florida 33308
> *Counsel for Plaintiff*

> /s/ *Elena D. Marcuss*
> Attorney